Coleman v. United States is next for argument today. Mr. Crickham. Good morning, and may it please the court. My client, Frederick Coleman, filed a motion to amend his 2255 petition. That amendment related back to the original motion, and the district court committed a legal error when it concluded otherwise. I will begin this morning and focus this morning on that relation back issue. The two pleadings in this case made the same legal claim, and that was a claim of ineffective assistance of counsel. That legal claim arose out of the same core facts. The common transaction or occurrence here was what did Mr. Coleman's lawyer tell him about the 851 notice, about the prior convictions that that notice relied on, and about the mandatory life sentence that that notice purported to trigger. Those issues were common. Those core facts were common to both of his pleadings, which is why they were related to one another. I think it's very helpful in this case and necessary to look at the specific sequence of events in the district court to see the relationship between the two pleadings. The initial 2255 motion said that Mr. Coleman's counsel failed to inform him about the 851 notice. It talked about the prior convictions referenced in that notice and the mandatory life sentence. Now, the government, I think, interprets that to mean that Mr. Coleman was complaining that his lawyer failed to tell him about the existence of a single docket entry, but I don't think that's right. I think that ignores the requirement that the court should read this pro se pleading liberally. Mr. Coleman's complaint was not that he didn't get a PACER notification. His complaint was that his lawyer failed to give him adequate information and counsel about an 851 notice that purported to trigger mandatory life in federal prison. And I think that broader reading of the initial motion is confirmed by what happened next, which is that the government asked for an attorney-client privilege waiver, and it asked for a pretty broad one. The waiver was not limited to a single conversation on a single day about a single docket entry, but rather it applied to all communications between Mr. Coleman and his lawyer about the filing of the 851 notice and about the potential life sentence. So when counsel provided an affidavit in response to the order from the district court, again, that affidavit was not limited to a single conversation about a single docket entry. The affidavit said that counsel told Mr. Coleman on more than one occasion about the mandatory life sentence, and then I think the key portion of that affidavit, counsel said, I informed Mr. Coleman that the mandatory life sentence was due to his prior criminal convictions. And I don't think there's any question. I think everyone agrees that that affidavit related back to the original motion. That was the whole purpose of the affidavit was to respond to the motion. So then critically, when Mr. Coleman files his motion to amend, he says, in essence, I agree with what my lawyer. Counsel, what is our standard of review on this question? The Supreme Court says that relation back is not allowed if the amended complaint, if the amended request is supported by facts that differ in both time and type from those in the original. And the district court here found that they did differ in time and type. Are we supposed to make an independent decision, or are we supposed to evaluate whether the district judge made a clear error? Review is de novo, Your Honor. Why? The reason is that the standard in Rule 15c is a legal one. No, look, the Supreme Court has said more than once that if you have a dispute about the meaning of a law, the Court of Appeals gives an independent decision. But if you have a dispute about the application of a law to a particular set of facts, the Court of Appeals acts deferentially. This looks like an application of a legal principle announced by the Supreme Court to a particular set of facts. Why is that not reviewed deferentially? Well, I think what the Supreme Court has said and what courts of appeals have said is that Rule 15a is a discretionary judgment, but Rule 15c is not. So, Your Honor, I would point the court to the Supreme Court's decision in Krupski, which we cited in our reply brief, where the court said, if the standard of Rule 15c is met, then relation back is mandatory. It is not within the district court's discretion. And the case is cited. Look, counsel, I'm asking, what is our stance when we're deciding whether that standard has been met? We don't seem to have a dispute about the meaning of the rule. That's been settled by mail against Felix. We have a dispute about the application of that rule to a particular set of facts. Do you have some Supreme Court case that would say the Court of Appeals reviews that independently? I don't have a Supreme Court case, Your Honor, but we've cited in footnote one of our reply brief a number of courts of appeals decisions that say that Rule 15c is ultimately a legal question. I think this is just missing the nature of my question. Well, Your Honor— You can proceed. What those courts of appeals have said is that the review of the district court's application of that legal standard is reviewed de novo. I think that's what— Well, then there's a problem with the Supreme Court because the Supreme Court has held otherwise. Well, I guess I'm not sure I'm going to be able to satisfy you this morning, Judge Easterbrook. I would say I would point the court to the Supreme Court's decision in Krupski and to the cases we cited in footnote one, and I would draw a distinction between Rule 15a, which rests in the district court's discretion, and Rule 15c, which is a legal standard and the court reviews the district court's application of that legal standard de novo based on the cases that we've cited. Returning to the merits of the relation back issue, what Mr. Coleman said in his motion to amend is I agree with what my lawyer said in his affidavit. That is what he told me. He told me that because of my prior convictions, I would get mandatory life in prison, and that's wrong. That's inadequate information. That's inadequate legal advice. That is, in fact, a legal error because the prior convictions did not qualify for the mandatory life sentence. So I think here there is a straight line between the motion to amend and counsel's affidavit and the original 2255 motion. I think each of those filings relate to one another, and I think it follows that the motion to amend relates back to the original motion. I think both parties in this case agree that the key issue here is fair notice. Did the government have fair notice about what it was going to have to litigate in this case? It strikes me as a line-drawing issue. Relation back, which is why I understand why Judge Easterbrook is concerned about the factual aspect of this. It's supposed to be the same in time and type, but these things are not light switches. It's not just a binary, oh, this is the same and this other thing is different. They come in all shades of gray. How broadly is that relation? I can certainly see the second thing that he files, the motion to amend, as elaborating, especially on the affidavit. The first thing is pretty cursory, but you make the valid point that they're both pro se filings. We have Erickson against Pardis. We have other cases that have reinforced the leeway that you give to pro se individuals. On the other hand, you also give some deference to the way the district judge interprets this. Was anybody who looked at that first motion aware that this whole Taylor and all this other line of cases, Ruth hadn't even come out yet, so good for Mr. Coleman, whoever he was being helped by at the prison, to spot that this issue about positional isomers was somehow going to come up. But it's hard from a notice point of view to realize that there was notice to the United States with that first petition. Maybe the notice to the United States is perfected by the time the motion to amend comes along, but what tucks under the broad category and what becomes just different enough from an evidentiary, from a notice point of view, from a type of evidence point of view, to make it either an error of law or an abuse of discretion, either one, in refusing to relate back? I agree with you, Judge Wood, that answering that question in the abstract is very difficult. There are some guideposts, and you've focused on notice. There's still an abstract question there about what is sufficient notice. I agree that I don't—I would admit that from the initial filing, it would not necessarily be obvious to the government that they would be litigating about isomers. I agree with that. I think it came as a surprise to some people, even in Ruth. I think that's a fair statement, Your Honor. However, what I do think the initial filing gave the government notice of, and this was sufficient, was that they had to litigate about the sufficiency of all of counsel's communications and advice to Mr. Coleman about that 851 notice, the prior convictions it relied on, and the life sentence. And certainly by the time we got to that affidavit, that affidavit had better have related back to the original motion or else there was an improper waiver of attorney-client privilege here, and privileged communications were improperly disclosed if there was not a close relationship. And, you know, when Mr. Coleman then takes that affidavit and in response says, yes, I agree, this is my complaint, that what my lawyer says he told me is not adequate under the Sixth Amendment and, in fact, is wrong, I think the government can't claim surprise that Mr. Coleman relied on the affidavit that the government asked for. That can't be an unfair surprise. So while I can't answer your question probably sufficiently in the abstract, I do think given the sequence of events in this case, you can, you know, reach a narrow ruling on that issue. If the court does not have questions about the merits, I will rely on our briefs there. I do think the most narrow ground on which to reverse here would simply be to reverse on the issue of relation back and remand to the district court for consideration of the merits in the first instance. And so if the court were interested in deciding this case on a narrow ground, that would be our suggestion. If there are no additional questions, I will reserve the rest of my time for rebuttal. Thank you. Mr. Simpson.  May it please the Court. I'm Scott Simpson on behalf of the United States. Before I start my argument, if I could just say a few words about the Harris decision and how we handled that in our brief in this case. There's some language kind of in the Harris decision that goes both ways. It says three times that the argument later accepted in Ruth was a novel argument, that it was too unprecedented to merit discussion with the client. But it has other language too that would point in the other direction. And in retrospect, we do wish we had included the fullness of that discussion from Harris in our brief to give this court a fuller understanding of the Harris decision. So we do regret our oversight in not discussing the opinion in full. We wanted to communicate that to the court today. So first of all, on the standard of review, the order under review here, of course, was the denial of a motion to amend. And it's clear that the standard of review on denial of a motion to amend is abuse of discretion. We see no reason for a different rule where the denial of the motion to amend is based on a relation back analysis. Granting or denying, as Judge Easterbrook has commented, granting or denying a motion to amend will often turn on applying law to fact. And the decision on relation back is no different in that respect. Coleman, Mr. Coleman, takes the position that the district court made a legal error here. But again, the district court in this case did not settle any question of law. It simply applied the established law to the facts of this case. But in any event, all of that having been said, the proper standard here really, we think, doesn't matter because the district court's denial of the motion to amend in this case should be affirmed, even if under de novo review. But even if it's an abuse of discretion review, this is certainly not a situation where the first version of the 2255 motion said, you know, I'm raising ineffectiveness of counsel for failing to, you know, pursue a Batson challenge. And then the second thing said, I'm pursuing it because I didn't get adequate notice of the 851. I mean, those are completely different things, we understand. And most of the cases that we see look more like that than look like this case. This is a close relative of what's in the first motion. And the first motion looks in that respect kind of like a placeholder. You know, I didn't get the 851 notice. And then the natural question would be, well, why does that matter? And the reason it matters is what's fleshed out in the second, in the request to amend. And maybe that goes to prejudice. Maybe it goes to certain other things. But it's not really a shift of theory. It's why does why? Who cares whether you got notice of the 851 or not? You knew what your priors were. You know, you knew this. And I'm concerned about that because it seems that it's awfully close. And it depends on how close do we need to be in order for it to be an abuse of discretion, as you would have it to refuse the amendment, particularly with the overlay that he's pro se, the Erickson overlay, you know, whatever you want to, whichever case you like to cite for giving some leeway to pro se litigants. Well, Your Honor, it's really, I think Your Honor's question really goes to two different issues. The first one is the standard of review here. Well, I'm trying to say for the sake of argument, let's make it abuse of discretion. I don't want to hover on that any more than we already have. Certainly, Your Honor. So going on to the relation back. And I acknowledge that it is closer than some cases, such as the Batson scenario that the court has mentioned. But really, the claim made in the original motion is really of a different type than the claim that he tried to raise in the motion to amend. Why is it a different type, though? It's the same 851 motion. Well, Your Honor, if you look, and I looked again, I looked again just now at the original motion, and it says that the main claim there is that his counsel failed to inform Mr. Coleman of the 851 notice enhancement provided by the government. And it is important. It is important to communicate, obviously very important to communicate with the client. I think any state disciplinary bar authority would tell us that one of the most common complaints against attorneys is failure to communicate. And failure to communicate would be a valid, conceivably valid basis for a claim of ineffective assistance. But this goes beyond that. Rather than failure to communicate, it's a substantive claim, a failure to conduct research, which is what it would require. In his reply brief, Mr. Coleman, it's in a footnote, says that the claim of a failure to conduct research was merely subsidiary, and I think counsel today has made basically the same argument. I thought Mr. Coleman was saying that if the notification had come to him, he would have done his own research, which is what he did. He actually did a pretty good job, actually. But, Your Honor, the notification— And without notification, he didn't have the tools he needed to do his own research. But he did receive notification. He did receive notification that the government was planning to rely on prior convictions. What the motion to amend tries to add to that is not communication, but research. It's of a different character. One can communicate without conducting research, obviously, and one can conduct research without communicating. We only need to look, I think, at the nature of Mr. Coleman's merits arguments, in this case on appeal, to understand the nature of the claim that he was trying to add to his Section 2255 motion. Of course, Mr. Coleman is now arguing relation back in order to make the merits argument that he's now making on appeal. And that argument is focused on researching, is focusing on anticipating Elder and Ruth and the other decisions that go along those lines, and coming up with what this court in Harris called a novel argument regarding drug definitions. That argument focuses on what Mr. Coleman did or did not do back at the office, not on what he did or did not do in communicating with Mr. Coleman. And it's the same—you see the same thing in relation to how the government would have had to respond to that. In responding to a complaint, my client—my attorney didn't communicate with me. You look at the facts. Did the client communicate? Or, as the district court found, did the defendant get that information in some other way at the hearings? Responding to the new claim, however, would have required the government to address the legal questions that we're now dealing with on the merits in this appeal. That is, should the attorney have anticipated Ruth and Elder and so forth? So a few words on the merits, Your Honors. Under Strickland, of course, the defense has to show both constitutionally deficient performance and prejudice. Now, Harris commented some on that deficient performance issue and made comments in both directions. Importantly, though, Harris didn't say anything about the prejudice prong. Especially in this case, though, really the deficient performance analysis under Strickland and the prejudice analysis under Strickland are very closely related. In light of the case law as it existed in 2014 when he was sentenced, Coleman's attorney surely didn't render unconstitutionally deficient performance by failing to make what Harris called an unprecedented argument. We've been a little inconsistent in that because in some instances we've said that it really wasn't such a novel argument. You can go all the way back to Taylor and you know that you have to compare and you have to see what the relation is between the state laws. And then there's some cases that say, oh, but at this granular level, nobody had even thought of it. But that's probably on us if we haven't been as clear as we should be. But in principle, you would say the government comes up with its proposed enhancers in the 851 notice. And the first thing defense counsel should do is say, are these appropriate under the statute? And let's compare. A couple of responses to that, if I could. One of them is on page, I think it was 23 of our brief. We cite two decisions, page 23. We cite two decisions by this court, unpublished decisions. One of them from 2011, holding the one in 2011, United States v. Jackson, held that conviction for possessing 15 grams of crack cocaine under 402C of the Illinois statute constituted a felony drug offense. But there's a reason they're non-precedential. They don't go through the full vetting that we're doing right now, for example. And I think the core of our point, Your Honor, is that that total vetting really didn't start until Elder. The basis for, besides Taylor, but really the— Which goes way back. Correct, correct. But the analysis that ultimately ended up in De La Torre on methamphetamine and on cocaine in Ruth really began with Elder. Just a few months earlier, just a few months before Elder in Brockmiller, the court expressly declined to address even whether to apply the categorical approach to the question of felony drug offense. The state said in Elder that determining whether a given state conviction qualifies as a felony drug offense under 802.44 is a question of first impression. So should—are we saying that we should require counsel to provide merely constitutional—that's a low bar—constitutional, effective constitutional performance, that they should anticipate that kind of thing? When Coleman was convicted in 2014, there was, of course, no direct precedent holding that the statutes didn't match because of the Illinois and federal definitions of cocaine. And at that time, 2014, there was not even any direct precedent holding that the categorical approach applied at all to that question. Mr. Coleman's opening brief in this appeal admits that it's not clear that any defense counsel, any defense counsel, and by that I take they mean any defense counsel anywhere in the country, had even advanced a Ruth-type argument when Coleman was sentenced in 2014. And, in fact, as we say on page 53 of our brief, at least two district courts in this circuit—these are two decisions from 2021—Williams v. United States from the Central District of Illinois and Neal v. United States from the Southern District of Illinois—those two decisions, and, of course, those district judges had seen firsthand the work of the defense counsel before them. They squarely held that those attorneys did not provide an effective assistance by failing to make a Ruth-type argument during sentences in 2017. Sentencings in 2017 and 2018. There were cases, though, in other circuits where the circuit courts applied the categorical approach to ascertaining the match between the state conviction and quote-unquote felony drug offense. Isn't that correct? Correct, Your Honor. Correct. And so I think some of the cases are listed in the Brock-Miller case. There was a First Circuit case in 2007, United States v. Brown. There was another case out of the Fourth Circuit in 2007, Fifth Circuit, 2005. And so when we're dealing with here a potential life sentence, if counsel were to research whether or not a circuit court—not even a district court, but circuit courts across the country—have applied the categorical approach in ascertaining what felony drug offense means, he would have had those cases. Correct, Your Honor. And I think that's why, aside from the deficient performance prong, we need to look as well at the prejudice prong. Even aside from the deficient performance prong, we have to look at whether there was a reasonable probability that the result of the proceeding would have been different if Mr. Coleman's attorney in 2014 had done that kind of thing. Let's say that he had done that kind of thing and he had brought that argument, that would be before Elder. That would be before Brock-Miller. But we frequently say somebody's case has to be the first one. But it would have been a great leap, Your Honor. And what we're saying here is that was there a reasonable probability in 2014, was there a reasonable probability that that argument would have succeeded? That's what the defense has to show here. And I just can't imagine we would say that there's a reasonable probability that he would have succeeded so he was ineffective constitutionally. So we urge the court, Your Honors, to affirm the denial of the motion to amend or alternatively to hold that Mr. Coleman has failed to show ineffective assistance. Thank you. Thank you, counsel. Mr. Crickbottom, anything further? Thank you, Your Honor. Three points. First, on the standard of review, in our reply brief, we cited the Elanis case in footnote one. That's a Fifth Circuit case noting that 11 of the 12 courts of appeals applied de novo review to relation back questions. This court should be reluctant to depart from the near consensus approach there. Second, on the substance of relation back, Judge Wood, you said this is awfully close. And I think that's true. And I think this court should apply two levels of leniency here. The first one is in Rule 15C, which says that dispositive decisions should be based on the merits. That is a long-held principle of the federal rules of civil procedure, and it applies in 2255 actions. And the second reason, Judge Wood already noted, Mr. Coleman is a high school dropout who wrote these petitions by hand from a federal prison, and his words should be interpreted liberally. When they are, there is enough here to find that the motion to amend related back. Whatever differences there are between these two pleadings, those differences should not determine whether Mr. Coleman must spend the rest of his life in federal prison. That sentence should not turn on trivial distinctions between these pleadings. Lastly, on the merits, I would encourage the court to look to Harris. Judge Wood, you noted that some of your decisions perhaps could be read in multiple ways on this issue. I think Harris is clear. Harris said in 2017, a competent, a minimally competent defense lawyer should have known about this argument. And nothing was different three years earlier in 2014 when Mr. Coleman was sentenced. The only difference in Harris is counsel in Harris had— Are you then surprised that we held in White in 2021 that Ruth is not retroactive? If it's just a simple application of Taylor, and every reasonable lawyer should have known that, why doesn't Ruth reach at least back to 1991? But White holds that it's not retroactive at all. I just wonder how that's consistent with the position you're taking now. Your Honor, I have not thought about that question. What's going on here fundamentally is you're trying to use the ineffective assistance doctrine to make Ruth fully retroactive even after the Seventh Circuit has held that it's not retroactive. No, Your Honor. If I could briefly address that question. Please do. Well, I think what you're getting at is could someone file a second or successive 2255 petition? It has nothing to do with second and successive petitions. Well, a decision is retroactive or not in a first petition, and White holds not. Though White said that the roots of Ruth go back to Taylor in 1990. No, White holds that Ruth was a novel decision and therefore not retroactive. I disagree, Your Honor. I know you disagree. Your whole position is there's nothing remotely novel about Ruth. And White said that, Your Honor. White said that this mismatch argument was not novel. Those were the words of White. This argument is not novel. Thank you, Your Honor. Thank you very much. And, Mr. Crickbaum, we appreciate your willingness and that of your law firm to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.